UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| WILLIAM DAVISON,<br><br>   Plaintiff,<br><br>   vs.<br><br>JO ANNE B. BARNHART,<br>Commissioner of Social Security,<br><br>   Defendant | Civil No. C05-858JLR<br><br>REPORT AND RECOMMENDATION ON SOCIAL SECURITY DISABILITY APPEAL |

Plaintiff William Davison proceeds through counsel in his appeal of a final decision of the Commissioner of the Social Security Administration ("Commissioner"). After a hearing before an Administrative Law Judge ("ALJ"), the Commissioner denied Plaintiff's application for Disability Insurance ("DI") benefits pursuant to 42 U.S.C. § 423 of the Social Security Act ("the Act"). Having considered the ALJ's decision, the administrative record ("Tr."), and all memoranda of record, the Court hereby reverses and remands for further proceeding.

ORDER
Page - 1 -

## I.   FACTS AND PROCEDURAL HISTORY

Plaintiff initially applied for DI benefits on May 18, 1989. The claim was denied and Plaintiff did not appeal. Plaintiff again applied for DI on November 27, 2001, alleging a disability onset date of November 1, 1999 due to low back pain, a learning disorder, and depression. The claim was denied initially and on reconsideration, and a request for a hearing was timely filed. A hearing was held before ALJ Arnold Battise on August 11, 2003. ALJ Battise took testimony from the Plaintiff (Tr. 206-246) and Marcy S. Davison, Plaintiff's wife (Tr. 245-249). Neither a medical expert nor a vocational expert testified. The ALJ issued a decision denying Plaintiff's benefits on April 17, 2004. Tr. 15-25. Plaintiff appealed the ALJ's decision to the Appeals Council, which declined to review Plaintiff's claim. Tr. 36-38. Plaintiff appealed this final decision of the Commissioner to this Court.

## II.   THE PARTIES' POSITIONS

Plaintiff requests that the Court reverse the Commissioner's decision and remand the case for further proceedings. Plaintiff alleges that the ALJ made errors in considering the medical evidence in determining his residual functional capacity (RFC) and by failing to take testimony of a vocational expert at step five. The Commissioner asserts that the ALJ's findings are supported by substantial evidence, error free and should be affirmed.

## III.   JURISDICTION

The Court has jurisdiction to review the ALJ's decision pursuant to 42 U.S.C. § 405(g).

## IV.   STANDARD OF REVIEW

This Court's review of the ALJ's decision is limited to whether the decision is in accordance with the law and the findings supported by substantial evidence in the record as a whole. *See Penny v. Sullivan*, 2 F.3d 953, 956 (9th Cir. 1993). Substantial evidence means more than a scintilla, but less than a preponderance; it means such relevant

ORDER
Page - 2 -

evidence as a reasonable mind might accept as adequate to support a conclusion. *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989). If there is more than one rational interpretation, one of which supports the ALJ's decision, the Court must uphold that decision. *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002).

## V.   EVALUATING DISABILITY

A claimant bears the burden of proving that he or she is disabled. *Meanel v. Apfel*, 172 F.3d 1111, 1113 (9th Cir. 1999). Disability is defined as the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment, which can be expected to result in death, or which has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. § 423 (d)(1)(A).

The Commissioner follows a five-step sequential evaluation process for determining whether a claimant is disabled. *See* 20 C.F.R. §§ 404.1520, 416.920 (2000). At step one, the claimant must establish that he or she is not engaging in any substantial gainful activity. 20 C.F.R. §§ 404.1520(b), 416.920(b). At step two, the claimant must establish that he or she has one or more medically determinable severe impairments or combination of impairments. If the claimant does not have a "severe" impairment, he or she is not disabled. *Id.* at § ©). At step three, the Commissioner will determine whether the claimant's impairment meets or equals any of the listed impairments described in the regulations. A claimant who meets one of the listings is disabled. *See Id.* at § (d).

At step four, if the claimant's impairment neither meets nor equals one of the impairments listed in the regulations, the Commissioner evaluates the claimant's RFC and the physical and mental demands of the claimant's past relevant work. *Id.* at § (e). If the claimant is not able to perform his or her past relevant work, the burden shifts to the Commissioner at step five to show that the claimant can perform some other work that exists in significant numbers in the national economy, taking into consideration the

claimant's RFC, age, education, and work experience. *Id.* at § (f); *Tackett v. Apfel*, 180 F.3d 1094, 1100 (9th Cir. 1999). If the Commissioner finds the claimant unable to perform other work, then the claimant is found disabled.

## VI. SUMMARY OF THE RECORD EVIDENCE

Plaintiff was born on XXXX, 1964.[1] Tr. 61. He earned a general equivalency diploma (GED) and completed two years of college earning a culinary arts degree. Tr. 75, 138, 167. Plaintiff has worked as a machinist, receiving clerk, auto lot attendant, breakfast cook, gas station attendant, pet store clerk, salad chef, and houseman. Tr. 34, 70, 82-88, 111-118, 166-167, 196, 209-215 . Plaintiff's age was 34 at the time of the alleged onset of his disability and 39 at the time of the ALJ's decision. Plaintiff asserts that limitations relating to low back pain, as well as a learning disorder and depression, render him disabled. Other evidence relevant to Plaintiff's allegations is incorporated into the discussion below.

## VII. THE ALJ'S DECISION

At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since his alleged disability onset date. Tr. 16. At step two, he found that Plaintiff had the following severe impairments: history of compression fracture in his lumbar spine, depression, learning disorder, and dyslexia. Tr. 16. At step three, the ALJ found that Plaintiff's impairments did not meet or equal the requirements of a listed impairment. Tr. 16-17.

The ALJ determined at step four that Plaintiff retained the RFC to perform a significant range of light work: he can lift or carry twenty pounds occasionally and ten

---

[1] Plaintiff's date of birth is redacted back to the year of birth in accordance with the General Order of the Court regarding Public Access to Electronic Case Files, pursuant to the official policy on privacy adopted by the Judicial Conference of the United States.

pounds frequently; he can stand or walk for approximately six hours in an eight hour workday; he can sit for approximately six hours in an eight hour workday; he can perform simple and repetitive tasks, but should not work with the public; he can occasionally climb stairs, stoop, crouch, and crawl, but he should avoid concentrated exposure to vibration. Tr. 24.  The AlJ also found that Plaintiff is unable to perform any of his past relevant work.

At step five, the ALJ found that, based on the above RFC, Plaintiff can perform work existing in significant numbers in the national economy, relying exclusively on the Medical Vocational Guidelines (Guidelines or Grids).  Tr. 23.

## VIII.   DISCUSSION

Plaintiff claims two errors occurred that require reversal of the ALJ's final decision: (1) the ALJ improperly considered the medical evidence in determining Plaintiff's RFC, and (2) the ALJ should have taken the testimony of a vocational expert at step five.

A.   The ALJ's Consideration of the Medical Evidence

Plaintiff was evaluated by four psychologists: (1) Dr. Hammer, Plaintiff's examining psychologist, (2) Dr. Bennet, an agency examining psychologist, (3) Dr. Peterson, an agency non-examining psychologist, and (4) Dr. Fitz, an agency examining psychologist. In general, more weight should be given to the opinion of a treating physician than to a non-treating physician, and more weight to the opinion of an examining physician than to a non-examining physician. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1996).  Where not contradicted by another physician, a treating or examining physician's opinion may be rejected only for "clear and convincing" reasons. *Id*. (quoting *Baxter v. Sullivan*, 923 F.2d 1391, 1396 (9th Cir. 1991).  Where contradicted, a treating or examining physician's opinion may not be rejected without "'specific and legitimate reasons' supported by substantial evidence in the record for so doing." *Id*. at

830-31 (quoting *Murray v. Heckler*, 722 F.2d 499, 502 (9th Cir. 1983)).

    1. Dr. Hammer

Dr. Hammer examined Plaintiff in July 2003 at the request of his attorney. He diagnosed Plaintiff with a learning disorder, a major depressive disorder (recurrent), a pain disorder, and a personality disorder. Tr. 168. Dr. Hammer opined that Plaintiff's ability to reason and sustain concentration is poor and he has marked limits with detailed instructions, making judgments on simple work related decisions, interacting appropriately with the public, interacting appropriately with supervisors, responding appropriately to work pressures in a usual work setting, and responding appropriately to changes in a routine work setting. *Id*. Dr. Hammer also opined that Plaintiff has moderate limitations with short, simple instructions and interacting with co-workers. *Id*. He concluded that Plaintiff is unable to function is a regular work environment:

> With [Plaintiff's] long-term history of a learning disability, low self-esteem, depression, and pain he would be unable to function in a regular work situation where he had to work eight hours a day and five days a week.

*Id*.

The ALJ rejected Dr. Hammond's conclusion that Plaintiff's depression, learning disorder and dyslexia preclude employment. Tr. 22. The ALJ noted that Plaintiff has worked in the past despite these limitations and did not testify that his cognitive difficulties were worse now than in the past. *Id*. In addition, Plaintiff testified that he did not know if he is depressed, which the ALJ found indicates that his depression is not as limiting as Dr. Hammer opined. Tr. 22, 242.

Plaintiff argues that substantial evidence does not support the reasons the ALJ gave for rejecting Dr. Hammer's opinions. He claims that his testimony in which he stated that he did not know if he is depressed is not sufficient to show that Dr. Hammer's diagnosis was incorrect. In addition Plaintiff testified that he tried to "hide" his mental shortcoming as much as possible. Tr. 235.

Plaintiff's argument disregards that the ALJ also found that Plaintiff is not taking psycho tropic medication or receiving psychiatric or psychological care. Tr. 21. He has no history of mental health treatment outside of one visit with a psychologists during adolescence. *Id.* The ALJ also found that Plaintiff is independent in his personal care, supervises his children, cooks, cleans, gardens, and drives. Tr. 17. He participates in family activities and volunteers at a food bank. *Id.* Therefore, the ALJ's decision to reject Dr. Hammer's conclusions is supported by substantial evidence. *See Curry v. Sullivan*, 925 F.2d 1127, 1130 (9th Cir. 1990) (it is appropriate for the ALJ to note any of the claimant's daily activities which are inconsistent with the presence of a condition that would preclude work); *Magallanes*, 881 F.2d at 750 (the ALJ can meet [the burden for setting forth specific, legitimate reasons for rejecting an examining physician's opinion] by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings). When the evidence is susceptible to more than one rational interpretation, the ALJ's conclusion must be upheld. *Magallanes*, 881 F.2d at 750.

Plaintiff also contends that the ALJ failed to address the remaining mental impairments Dr. Hammer found: a learning disorder, a pain disorder, and a personality disorder. Contrary to Plaintiff's contention, the ALJ specifically rejected Dr. Hammer's conclusion "that the claimant's longstanding depression, learning disorder, and dyslexia would preclude employment." Tr. 22. The ALJ rejected this opinion based on the fact that Plaintiff has "worked in the past despite these impairments." *Id.* While it is true that the ALJ did not specifically address Dr. Hammer's diagnosis of a pain disorder, the ALJ found that Plaintiff's subjective complaints of pain, when measured against the objective evidence, were less than credible. Tr. 21. As the ALJ pointed out, the medical evidence in this case is quite sparse, which indicates that Plaintiff's back pain rarely required medical attention. *Id.* The ALJ also noted that Plaintiff is not taking pain medication,

ORDER
Page - 7 -

1 prescription or over-the-counter, which strongly suggests that his pain is not as severe as
2 alleged. *Id.* Finally, the ALJ noted that Plaintiff worked for many years after the date of
3 his back injury and he did not allege losing his job due to physical limitations. *Id.* This
4 testimony directly contradicts Dr. Hammer's pain disorder diagnosis and is a legitimate
5 basis for giving less weight to his opinion. *See Morgan v. Commissioner*, 169 F.3d 595,
6 602-603 (9th Cir. 1999).

7 In addition, while that ALJ did not specifically address Dr. Hammer's personality
8 disorder diagnosis, the Court may draw specific inferences from the ALJ's opinion, and
9 in this case, in reading the opinion in its entirety, it is clear that the ALJ rejected Dr.
10 Hammer's personality disorder diagnosis. *See Magallanes*, 881 F.2d at 751, 755 ( the
11 ALJ need not "recite the magic works, 'I reject [a physician's] opinion...because...'" and
12 the court may properly draw inferences from the ALJ's opinion). Accordingly, the Court
13 concludes that the ALJ provided specific and legitimate reasons based on substantial
14 evidence in the record to reject Dr. Hammer's opinion.

15     2.    Dr. Bennet

16 Dr. Bennet examined Plaintiff after the administrative hearing at the ALJ's
17 request. He diagnosed Plaintiff with a major depressive episode, a learning disorder, and
18 dyslexia. Tr. 198. He opined that Plaintiff has no limitation with simple instructions, but
19 has moderate limitations understanding detailed instructions and interacting appropriately
20 with supervisors and co-workers. Tr. 193-194. He further opined that Plaintiff has
21 marked limitations carrying out detailed instructions, making judgments on simple work
22 related decisions, interacting appropriately with the public, and responding appropriately
23 to work pressures or to changes in routine in a usual work setting. *Id.* Based on this
24 diagnosis, Dr. Bennet concluded that "if [Plaintiff were] ever to return successfully to the
25 workplace, he will require special or additional supervision." Tr. 198. He further
26 concluded that the Plaintiff would likely be able to complete a normal workweek without

1  significant interruption from his psychiatric condition, however, that stress encountered
2  in any competitive workplace "would lead to a decompensation." Tr. 198-199.

3        In arriving at Plaintiff's RFC, the ALJ "assigned some weight" to Dr. Bennet's
4  opinion. Tr. 22.  He rejected his conclusion that the Plaintiff would require special
5  supervision in the workplace, again noting that Plaintiff had worked steadily in the past
6  without such accommodation.  *Id*.  Plaintiff argues that the ALJ failed to account for Dr.
7  Bennet's entire opinion, claiming that the doctor found many more serious limitations
8  than the ALJ recognized in his decision.  Specifically, Plaintiff argues, the ALJ failed to
9  address Dr. Bennet's finding that Plaintiff has moderate limitations in interacting with co-
10 workers and supervisors and marked limitations in making judgments, responding
11 appropriately to work pressures, and responding appropriately to changes in a routine
12 work setting.

13       The Commissioner responds that the ALJ's RFC finding that Plaintiff is limited to
14 simple and repetitive tasks is consistent with Dr. Bennet's opinion.  The Commissioner
15 contends that the ALJ adequately rejected Dr. Bennet's opinion that Plaintiff needed
16 special supervision and would decompensate without it.  The Commissioner misstates Dr.
17 Bennet's opinion. Dr. Bennet opined that it was the stresses associated with the rigors of
18 a competitive workplace that would lead to decompensation.  Tr. 199.  The ALJ ignored
19 entirely this finding.  Nor did the ALJ address the moderate limitations in interacting with
20 co-workers and supervisors and the marked limitations in making judgments and
21 responding appropriately to work pressures and changes in routine work settings.  It is
22 possible that the ALJ meant to reject Dr. Bennet's opinion regarding these limitations
23 with the single statement "claimant [has] worked steadily in the past without such
24 accommodation," however he did not specifically address the limitations and this Court
25 cannot supply for the ALJ his reasons for rejecting Dr. Bennet's opinions.  The
26 Commissioner correctly notes that the ALJ need not spell out the precise weight afforded

ORDER
Page - 9 -

each physician's opinions and that the Court may appropriately draw inferences from the ALJ's decision. However, in this case, it is not possible to draw inferences from the ALJ's decision as related specifically to Dr. Bennet's opinions regarding the above limitations.  In other words, although pointing in many directions, there is nothing in the ALJ's analysis of the medical evidence directly addressing these limitations.  Therefore, the Court finds a remand for further proceedings warranted.  On remand, the ALJ should reassess and directly address Dr. Bennet's opinion that Plaintiff will suffer a decompensation if he enters a competitive workplace, as well as Plaintiff's moderate limitation in interacting with co-workers and supervisors and marked limitation in making judgments, and responding appropriately to work pressures and changes in routine work settings.  Additionally, to the extent such assessment impacts the remainder of the five step analysis, the ALJ should reexamine those steps accordingly.

        3.      Dr. Peterson

Dr. Peterson was a non-examining psychologist who assessed Plaintiff's condition for the State Agency in May 2002.  She opined that the Plaintiff could persist at a simple work routine, but he had a moderate restriction of activities of daily living and difficulties in maintaining concentration, persistence and pace, as well as a mild difficulty in maintaining social functioning. Tr. 159-61.  The ALJ assigned substantial weight in Dr. Peterson's opinion.  Tr. 22. Nevertheless, Plaintiff argues that the ALJ's RFC finding fails to take into consideration the totality of Dr. Peterson's opinion, specifically her opinion that Plaintiff has moderate limitations in areas of sustained concentration, persistence and pace, and a mild limitation in social functioning.

Contrary to Plaintiff's assertion, the ALJ specifically addressed Dr. Peterson's opinion that Plaintiff has moderate limitations with respect to concentration and pace. The ALJ rejected these limitations based on the fact that Plaintiff was able to work in the past despite any difficulty focusing.  Tr. 21.  He also noted that Plaintiff testified that he

1  is able to drive regularly, which suggests that his concentration and ability to focus are
2  adequate to the task at hand. *Id.* This testimony directly contradicts Dr. Peterson's
3  findings and is a consideration in rejecting his opinion. *See Morgan*, 169 F.3d at 602-
4  603. In addition, the ALJ's RFC finding specifically limited Plaintiff to simple and
5  repetitive work without contact with the public. Tr. 24. This sufficiently accommodates
6  the mild limitation in social functioning.[2]

Plaintiff further asserts that the ALJ failed to address Dr. Peterson's opinion that Plaintiff has moderate limitations in his ability to perform activities within a schedule, maintain regular attendance, be punctual, interact with co-workers, respond to changes in work setting, and ability to set realistic goals and make plans independently from others.

In response, the Commissioner asserts that the ALJ need not mention every check-box category in order to accommodate all of the limitations opined by the physician. However, as Plaintiff notes, the Commissioner relies on post hoc rationalizations for the ALJ's decision, rather than reasons the ALJ actually gave for rejecting these limitations. The ALJ's failure to specifically address these limitations is particularly troubling given that he relied heavily on Dr. Peterson's opinion in reaching his decision. Accordingly, the Court finds that remand for further proceedings is warranted. On remand, the ALJ should reassess and directly address the limitations discussed above. To the extent such assessment impacts the remainder of the five step analysis, the ALJ should reexamine those steps accordingly.

---

[2] The *Andrew v. Shalala*, 53 F.3d 1035, 1044 (9th Cir. 1995) decision, pointed to by Plaintiff, is inapposite. In that case, the Court found that the ALJ failed to include all of the limitations found by a physician and adopted by the ALJ in a hypothetical to a vocational expert. *Id.* at 1043-44. In this case, the ALJ did not expressly adopt the opinions of Dr. Peterson wholesale and was under no obligation to do so. Instead, the ALJ adopted the conclusion of this psychologist that Plaintiff has moderate restriction of activities of daily living and difficulties in maintaining concentration, persistence or pace and mild difficulties in maintaining social functioning.

ORDER
Page - 11 -

    4.    <u>Dr. Fitz</u>

Dr. Fitz is an agency psychologist who examined Plaintiff in April 2002. He was the first of the four psychologists to evaluate Plaintiff. Dr. Fitz diagnosed Plaintiff with recurrent major depression of moderate severity, a learning disorder, and a pain disorder. Tr. 139. Dr. Fitz commented on Plaintiff's over all mental condition as:

> William's prognosis for increasing his independence and for employment potential is mildly to moderately impaired. From a cognitive standpoint, he appears to have the ability to be involved in routine and structured work environments. However, his difficult for attention/concentration and cognitive processing speed will require that any work environment be able to accommodate him for these areas. William's depression and dependency characteristics will moderately limit his ability to find and maintain a job. He shows some disinterest in relating to others and this will mildly limit his ability to work in social settings with other individuals.

*Id.*

In his decision, the ALJ summarized the facts of Dr. Fitz's report and opinions, but he did not analyze those opinions in determining Plaintiff's RFC. Tr. 17-18, 22. It is possible for this Court to draw the inference that the ALJ rejected Dr. Fitz's depression, learning disorder and pain disorder diagnosis based on the ALJ's analysis of the remaining three psychologists' opinions. However, the ALJ's decision failed entirely to address the Dr. Fitz's determination that Plaintiff should be limited to "structured work environments" that accommodate his difficulty with attention and concentration and his slow cognitive processing speed. The Commissioner argues that the ALJ accommodated this limitation by limiting Plaintiff to "simple and repetitive tasks." Tr. 22. However the Commissioner cites no legal or medical authority showing that simple, repetitive tasks only occur in structured work environments.

The ALJ's complete failure to address Dr. Fitz's opinions is clear error. *Baxter,* 923 F.2d at 1396. Without a proper record from the ALJ, the Court is unable to evaluate his reasons for rejecting Dr. Fitz's opinion. The Court instructs the ALJ, upon remand, to make specific findings with regard to Dr. Fitz's opinion. To the extent such assessment

ORDER
Page - 12 -

impacts the remainder of the five step analysis, the ALJ should reexamine those steps accordingly.

B.      Use of a Vocational Expert

Plaintiff argues that the ALJ erred in relying exclusively on the Medical-Vocational Guidelines to determine the effects of Plaintiff's limitations on his job base.[3] He contends that because the ALJ found that he is depressed, has dyslexia and a learning disorder, and is not able to return to his past work, he erred in not taking the testimony of a vocational expert at step five. An ALJ may rely on the guidelines to meet her burden at step five. *Burkhart v. Bowen*, 856 F.2d 1335, 1340 (9th Cir. 1988). "They may be used, however, 'only when the grids accurately and completely describe the claimant's abilities and limitations." *Id.* (quoting *Jones v. Heckler*, 760 F.2d 993, 998 (9th Cir. 1985)). "When a claimant's non-exertional limitations are 'sufficiently severe' so as to significantly limit the range of work permitted by the claimant's exertional limitations, the grids are inapplicable[]" and the testimony of a vocational expert is required. *Id.* (quoting *Desrosiers v. Secretary of Health & Human Servs.*, 846 F.2d 573, 577 (9th Cir. 1988)). *Accord Tackett*, 180 F.3d at 1103-04 ("Because Tackett's non-exertional limitations 'significantly limit the range of work' he can perform, mechanical application of the grids was inappropriate.")

The Court need not determine whether the ALJ erred in relying on the guidelines at step five, given the need to remand this matter for further administrative proceedings

---

[3] Plaintiff argues that the ALJ erred when he relied (or impliedly relied) on SSR 85-15 to reach his step five finding without vocational-expert testimony. Tr. 23. While Plaintiff is correct that in *Roberts v. Shalala*, 66 F.3d 179 (9th Cir. 1995), the Ninth Circuit held that SSR 85-15 is not applicable to cases involving both exertional and nonexertional limitations, the ALJ does not rely on SSR 85-15 to justify his decision not to take the testimony of a vocational expert.

ORDER
Page – 13 –

for the reasons discussed above. The ALJ needs to reassess the opinions of Drs. Bennet, Peterson and Fitz. If after doing so the ALJ concludes that Plaintiff's RFC includes non-exertional limitations that are sufficiently severe so as to significantly limit the range of work permitted by his exertional limitations, the ALJ may not rely exclusively on the guidelines to make the step five determination. *Desrosiers*, 846 F.2d at 577.[4]

C.   The ALJ's Educational Finding

Plaintiff argues that the ALJ's finding that he has a high school education or above is not supported by substantial evidence because the ALJ did not account for Plaintiff's learning disorder and dyslexia. At step five, an ALJ must account for a claimant's RFC and vocational profile – including age, education, and work experience. 20 C.F.R. §§

---

[4]Plaintiff contends that the ALJ's present findings necessitate vocational-expert testimony at step five. Plaintiff argues that because the ALJ found that he has a "severe" mental impairment at step two, the ALJ necessarily determined that mental impairment significantly limits his ability to perform unskilled work. He cites *Edlund v. Massanari*, 253 F.3d 1152, 1160 (9th Cir. 2001) for this proposition. The Ninth Circuit withdrew the *Edlund* opinion cited by plaintiff and substituted an unpublished opinion in its place. *See Edlund v. Massanari*, No. 99-35555, 2001 U.S. App. LEXIS 17960 (9th Cir. Aug. 9, 2001). Also, although the Ninth Circuit did find that the ALJ in that case "failed to factor [the claimant's] mental impairment in her Step 5 analysis[,]" and noted that the hypothetical proffered to the vocational expert failed to include consideration of such impairments, it did not draw the particular conclusion argued by plaintiff here–that a step two severity finding of mental impairment necessitates vocational expert testimony. *Id.* at *23-24. Although the step two severity finding looks to "significant" limitations, plaintiff fails to establish that this language mandates vocational testimony at step five. Plaintiff did not cite, and the undersigned did not find, any Ninth Circuit case law directly on point supporting this argument.
    Plaintiff also argues that because the ALJ limited Plaintiff to performing simple, repetitive tasks, the testimony of a vocational expert was required. Plaintiff argues that the "repetitive" restriction goes above and beyond limitations to unskilled work and, therefore, requires vocational expert testimony at step five. However, Plaintiff again does not cite any Ninth Circuit case law supporting this argument.
    Finally, Plaintiff argues that the moderate concentration deficit acknowledged by the ALJ also required vocational expert testimony at step five. However, none of the "instructive" cases cited by plaintiff support such a proposition.

ORDER
Page - 14 -

416.920(g), 416.960(c). The record reflects that the ALJ appropriately considered education level, taking into account his learning disability. As discussed above, the ALJ discounted the effects of Plaintiff's learning disability because he was able to obtain a GED and complete a culinary arts degree. Accordingly, the Court concludes that substantial evidence exists in the record that supports the ALJ's educational finding.

## IX.   CONCLUSION

The Commissioner's determination to deny Plaintiff disability benefits is not supported by substantial evidence or free of legal error. Based on the record evidence, the undersigned recommends that the Commissioner's decision be REVERSED and REMANDED for further proceedings.

DATED at Seattle, Washington this 14th day of March, 2006.

*/s/ M. Benton*
MONICA J. BENTON
United States Magistrate Judge